UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MANUEL M.,

                    Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.
_____

**DECISION AND ORDER**

1:24-CV-00841 EAW

## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Manuel M. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act ("Act"), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). (*See id.*).

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 7; Dkt. 11), as well as Plaintiff's reply (Dkt. 14). For the reasons discussed below, the Commissioner's motion for judgment on the pleadings (Dkt. 11) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 7) is denied.

## BACKGROUND

On February 3, 2015, Plaintiff filed an application for SSI. (*See* Dkt. 3 at 260-68).[1] Plaintiff alleged that he was disabled because of back and neck problems, liver problems, and depression, with a disability onset date of June 1, 2008. (*See id.* at 276, 281). The Social Security Administration ("SSA") initially denied Plaintiff's application, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*See id.* at 131-44, 147-61). Following a hearing on September 21, 2017, ALJ Larry Banks issued an unfavorable decision on February 2, 2018. (*See id.* at 16-38, 73-97). Plaintiff requested Appeals Council review, which was denied on December 10, 2018. (*See id.* at 8-15).

Plaintiff then filed a district court action in the Western District of New York, and on September 26, 2019, the Honorable Frank P. Geraci, Jr., remanded Plaintiff's case to the Commissioner for further administrative proceedings pursuant to a joint stipulation by the parties. (*See* Dkt. 4 at 228-29). On June 11, 2020, Plaintiff had a hearing before ALJ Benjamin Chaykin, who issued an unfavorable decision on July 29, 2021. (*See id.* at 100-55). Plaintiff filed another district court action, and on February 28, 2023, this Court remanded Plaintiff's case to the Commissioner for further administrative proceedings pursuant to a joint stipulation by the parties. (*See id.* at 1094-95). On March 12, 2024, Plaintiff had another hearing before ALJ Chaykin, who issued an unfavorable decision on May 14, 2024. (*See id.* at 1017-66). Plaintiff then filed the present action on September 10, 2024. (Dkt. 1).

---

[1]     Page numbers in docket citations refer to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

## LEGAL STANDARDS

### I.    District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation modified).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by "substantial evidence."  *See* 42 U.S.C. § 405(g). "'Substantial evidence' is 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Talavera*, 697 F.3d at 151 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (citation modified).  However, "the deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citation modified).

### II.    Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. § 416.920(a); *see Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  20 C.F.R. § 416.920(b).  If so, the claimant is not disabled.  *Id.*  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to

perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." *Id.* But if the claimant does have at least one severe impairment, the ALJ continues to step three. *Id.*

At step three, the ALJ examines whether a claimant's severe impairment meets or medically equals the criteria of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *Id.* § 416.920(d). If the severe impairment meets or medically equals the criteria of a listed impairment and has lasted, or is expected to last, for a continuous period of at least 12 months, then the claimant is disabled. *Id.* If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). "'A regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. 20 C.F.R. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* But if he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant, in light of his or her age, education, and work experience, "retains a residual functional capacity to perform alternative substantial gainful work which exists in the

national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (citation modified); *see* 20 C.F.R. § 416.960(c).

## DISCUSSION

### I.    The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920(a). (*See* Dkt. 4 at 1023-39). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his application date of February 3, 2015. (*See id.* at 1026). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: a disorder of the spine, affective disorder, anxiety disorder, major depressive disorder, borderline intellectual functioning, and post-traumatic stress disorder ("PTSD"). (*See id.* at 1026-27). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal one of the Listings. (*See id.* at 1027). In particular, the ALJ considered Listings 12.04, 12.05, 12.06, and 12.15. (*See id.*).

Further, the ALJ considered the impact of Plaintiff's affective disorder, anxiety disorder, major depressive disorder, borderline intellectual functioning, and PTSD on his mental work-related functioning and found that he was: (1) moderately impaired in understanding, remembering, or applying information; (2) moderately impaired in interacting with others; (3) moderately impaired in concentrating, persisting, or maintaining pace; and (4) moderately impaired in adapting and managing himself. (*See id.* at 1027-28). Then, before proceeding to step four, the ALJ concluded that Plaintiff had the RFC to perform "light work" as defined in 20 C.F.R. § 416.967(b), except that he was

limited to: (1) occasional climbing, stooping, crouching, balancing, kneeling, and crawling; (2) frequent operation of foot controls; (3) occasional exposure to dangerous hazards such as unprotected heights or dangerous machinery; (4) understanding, remembering, and carrying out simple instructions; (5) occasional interaction with supervisors and coworkers, with no teamwork or tandem tasks, as well as occasional and superficial interaction with the public; (6) sustaining concentration and persistence for periods of up to two hours at a time; and (7) occasional changes in the work setting.  (*See id.* at 1029).

At step four, the ALJ found that Plaintiff had no past relevant work.  (*See id.* at 1037).  But at step five, the ALJ found that Plaintiff, given his age, limited education, and RFC, could perform work as a machine tender, line attendant, or product sorter.  (*See id.* at 1038).  Accordingly, the ALJ determined that Plaintiff had not been disabled as defined by the Act since February 3, 2015.  (*See id.* at 1039).

## II.    <u>The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error</u>

Plaintiff asks the Court to remand this matter to the Commissioner for further administrative proceedings, arguing that the ALJ erred in three ways.  (*See* Dkt. 7-1 at 15-25).  First, Plaintiff argues that the ALJ failed to address the issue of collateral estoppel as it relates to a previous award of benefits in 2012.  (*See id.* at 15-17).  Second, Plaintiff argues that the ALJ failed to rely on any medical opinions in his written determination. (*See id.* at 17-23).  And third, Plaintiff argues that the ALJ failed to reconcile Plaintiff's kindergarten reading level with the RFC.  (*See id.* at 23-25).  The Court has considered those arguments, and for the reasons discussed below, finds them without merit.

A.    **Prior Award of Benefits and Collateral Estoppel**

"Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002). Generally speaking, "collateral estoppel applies when: (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Id.* at 288-89 (citation modified).

Here, Plaintiff argues that the ALJ failed to address the issue of collateral estoppel, which purportedly applies in this case because Plaintiff was previously found disabled under Listing 12.05B and awarded benefits in 2012. (*See* Dkt. 7-1 at 15-17; *see also* Dkt. 3 at 127-129 (copy of Appeals Council decision finding that Plaintiff met the requirements of Listing 12.05B and awarding him benefits on April 4, 2012)). The Court is not persuaded by Plaintiff's argument for two reasons.

First, it is not clear that collateral estoppel would apply in this case. Plaintiff was incarcerated for a period of more than 12 months following his previous award of benefits, and as a result, his benefits were terminated and he had to file a new application. *See* 42 U.S.C. §§ 1382(e)(1)(A), 1383(j)(1)(B); *see also Willie A. K. v. Comm'r of Soc. Sec.*, No. 1:22-CV-474-JJM, 2025 WL 410062, at *4 (W.D.N.Y. Feb. 6, 2025) ("[W]here an individual's eligibility for SSI benefits is terminated due to incarceration, such individual is required to make a new application, and the consideration of such application is

conducted 'without deference to prior findings.'" (quoting *Maurice Johnson B. v. Commissioner of Social Security*, 2024 WL 4273350, at *3 (W.D.N.Y. 2024))); *Singletary v. Allen*, No. 11-CV-6055, 2012 WL 3204071, at *7 (W.D.N.Y. Aug. 3, 2012) ("When [SSI] benefits are terminated because of the incarceration of the recipient, the individual must reapply for benefits under section [1382] and meet the requirements for disability under the section."); *Reginald J. v. O'Malley*, No. 22 C 6459, 2024 WL 5119900, at *3 (N.D. Ill. Dec. 16, 2024) (rejecting application of res judicata or collateral estoppel where benefits were stopped due to incarceration because plaintiff's new application covered the time period following the new application and the prior determination had no preclusive effect).

Second, even if the ALJ had considered the prior disability determination, Plaintiff's previous award of benefits was based on a prior version of Listing 12.05B, which required only a valid verbal, performance, or full-scale IQ of 59 or less, whereas the version of Listing 12.05B applicable here required: (1) either a full-scale IQ score of 70 or lower, or a full-scale IQ score of 71 through 75 accompanied by a verbal or a performance IQ score of 70 or lower; (2) either an extreme impairment in one, or a marked impairment in two, of the four "paragraph B" areas of mental work-related functioning; and (3) evidence demonstrating or supporting the conclusion that the disorder began prior to age 22. *Compare* 75 Fed. Reg. 51336, 51346 (Aug. 19, 2010) (version of Listing 12.05B under which Plaintiff was previously awarded benefits in 2012), *with* 81 Fed. Reg. 66138, 66155 (Sept. 26, 2016) (version of Listing 12.05B applicable here); *see also Pollard v. Halter*, 377 F.3d 183, 190-91 (2d Cir. 2004) (determining which version of the SSA's rules applied

to judicial review of an ALJ's decision).  Thus, the prior determination would not be dispositive of the issues before the ALJ on the 2015 application and any failure to consider the prior determination, even if required, was harmless.  *See Anthony G. v. Comm'r of Soc. Sec.*, No. 24 CIV. 3852 (GWG), 2025 WL 1937314, at *8 (S.D.N.Y. July 15, 2025) ("Administrative res judicata is appropriately applied where a prior determination on the same facts and issues made by the Commissioner has become final by either administrative or judicial action." (quoting *Navan v. Astrue*, 303 F. App'x 18, 20 (2d Cir. 2008))); *Russell v. Kijakazi*, No. CV 21-939, 2023 WL 2278651, at *8 (E.D. Pa. Feb. 27, 2023) ("[T]he ALJ explained that the prior decision was not controlling because there was a change in the mental health listings, tr. at 15, and the ALJ was reviewing a period years after the original award of benefits, utilizing a subsequent change to the mental health listings, and the bases for Plaintiff's alleged disability had changed.  Accordingly, Plaintiff is not entitled to relief on his collateral estoppel claim or the claim that the ALJ failed to or improperly considered the prior administrative decision.").  Accordingly, Plaintiff is not entitled to remand on collateral estoppel grounds.

### B.    Evaluation of Opinion Evidence

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022).  A claimant's RFC need not "perfectly correspond with any of the opinions of medical sources cited in his decision," *Matta*, 508 F. App'x at 56, and remand for further administrative proceedings is unnecessary as long as the ALJ's analysis "affords an

adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence," *see Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).

For claims filed before March 27, 2017, such as Plaintiff's, the ALJ must "evaluate every medical opinion [he or she] receives."  20 C.F.R. § 416.927(c).  During that process, the ALJ must assign a weight to each medical opinion based on his or her consideration of several factors.  *See id.*  Those factors include: (1) whether the medical source has an examining or treating relationship with the claimant; (2) whether the medical source provides evidence to support his or her medical opinion; (3) whether the medical opinion is consistent with the record as a whole; (4) whether the medical source is a specialist; and (5) "any [other] factors [the claimant] or others bring to [the ALJ's] attention, or of which [the ALJ is] aware, which tend to support or contradict the medical opinion."  *See id.*

In this case, the ALJ considered nine different opinions when evaluating Plaintiff's physical and mental impairments.  (*See* Dkt. 4 at 1035-37).  The ALJ assigned the following weights to those opinions: (1) "limited weight" to the June 2015 opinion of consultative examiner Donna Miller, D.O.; (2) "some weight" to the April 2021 opinion of consultative examiner Nikita Dave, M.D.; (3) "little weight" to the November 2008 opinion of consultative examiner Kathleen Kelley, M.D.; (4) "moderate weight" to the June 2015 opinion of state agency review physician V. Reddy, Ph.D.; (5) "partial weight" to the June 2015 opinion of consultative examiner Janine Ippolito, Psy.D.; (6) "partial weight" to the September 2023 opinion of Dr. Ippolito; (7) "limited weight" to the November 2017 opinion of consultative examiner Susan Santarpia, Ph.D.; (8) "little weight" to the

- 10 -

November 2008 opinion of consultative examiner Thomas Ryan, Ph.D.; and (9) "no weight" to the March 2024 opinion of treating provider Jennifer Prell, LMSW.  (*See id.*).

Plaintiff argues that the ALJ impermissibly relied on his own lay opinion because he did not assign controlling weight to any of the opinions in the record.  (*See* Dkt. 7-1 at 17-21).  The ALJ, however, did not need to assign controlling weight to any opinion because he "was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."  *See Matta*, 508 F. App'x at 56; *see also Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109-10 ("Although there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity." (citation modified)).  What is more, the ALJ did not need to defer to the opinion of LMSW Prell under the so-called "treating physician rule," which provides that "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with (or contradicted by) other substantial evidence in the claimant's case record," *see Schillo*, 31 F.4th at 75, because licensed master social workers are not "acceptable medical sources," *see, e.g.*, *Cleophus B. v. O'Malley*, No. 21-CV-1223F, 2024 WL 1067474, at *6 (W.D.N.Y. Mar. 12, 2024) (acknowledging that the treating physician rule does not apply licensed social workers); *see also* 20 C.F.R. § 416.913 (2013) (setting forth the list of acceptable medical sources for claims filed before March 27, 2017).

Plaintiff also argues that the ALJ impermissibly relied on his own lay opinion because he "did not have a single opinion in [the entire] record speaking to the current Paragraph B criteria [for Listing 12.05]." (*See* Dkt. 7-1 at 22). This is simply untrue, as both Dr. Ippolito and Dr. Santarpia's opinions evaluated Plaintiff's degree of impairment in the four areas of mental work-related functioning. (*See* Dkt. 3 at 362 (relevant portion of Dr. Ippolito's opinion from June 2015); Dkt. 4 at 92 (relevant portion of Dr. Santarpia's opinion from November 2017); Dkt. 5 at 9-10 (relevant portion of Dr. Ippolito's opinion from September 2023)).

In the Court's view, the ALJ followed the regulations when evaluating the nine medical opinions in the record. *See* 20 C.F.R. § 416.927(c) (requiring the ALJ to evaluate and assign a weight to every opinion he or she receives). To the extent Plaintiff argues otherwise, such an argument really boils down to a disagreement with the ALJ's weighing of the evidence, and it is "not the function of this Court to re-weigh evidence or consider *de novo* whether [Plaintiff] is disabled." *Teena H. o/b/o N.I.K. v. Comm'r of Soc. Sec.*, 521 F. Supp. 3d 287, 292 (W.D.N.Y. 2021); *see Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013) ("We believe that Pellam is, in reality, attempting to characterize her claim that the ALJ's determination was not supported by substantial evidence as a legal argument in order to garner a more favorable standard of review."). Plaintiff therefore is not entitled to remand based on the ALJ's evaluation of the medical opinions in the record, either.

## C. Reconciliation of Reading Level

Lastly, Plaintiff argues that the ALJ failed to reconcile Plaintiff's kindergarten reading level with the RFC. (*See* Dkt. 7-1 at 23-25). In November 2008, Dr. Ryan

completed an intelligence evaluation and found that Plaintiff had a kindergarten reading level and a full-scale IQ of 55. (*See* Dkt. 4 at 373-74). Dr. Ryan concluded that Plaintiff had: (1) no significant limitations in following and understanding simple directions and instructions, performing simple tasks, maintaining attention and concentration, and maintaining a regular schedule; (2) significant limitations in learning new tasks, performing complex tasks, and making adequate decisions; and (3) mild limitations in dealing with others and dealing with stress. (*See id.* at 374). The ALJ gave the opinion "little weight" because Dr. Ryan "conducted his evaluation approximately seven years before [Plaintiff] filed his application for disability benefits, and he d[id] not attempt to quantify or define . . . the term 'significant limitation.'" (*See id.* at 1037).

Despite Plaintiff's argument to the contrary, the ALJ did not "appear to credit [Dr. Ryan's finding] that Plaintiff has a kindergarten reading level." (*See* Dkt. 7-1 at 24). Rather, it appears that the ALJ discredited that finding in favor of Dr. Ippolito's and Dr. Santarpia's more-recent findings that Plaintiff had only a mild impairment in understanding, remembering, and applying complex directions and instructions (*see* Dkt. 4 at 92; Dkt. 5 at 10), which is consistent with the ability to perform unskilled work, *see, e.g.*, *Shawn V. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0997 (WBC), 2021 WL 3022295, at *4 (W.D.N.Y. July 16, 2021) ("The Second Circuit has held that moderate [impairments] in work related functioning does not significantly limit, and thus prevent, a plaintiff from performing unskilled work." (citing *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010))). And that is exactly the type of work that the ALJ found that Plaintiff could perform. (*See*

Dkt. 4 at 1038).  Accordingly, Plaintiff is not entitled to remand based on the ALJ's

handling of Dr. Ryan's finding that Plaintiff had a kindergarten reading level.

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the

pleadings (Dkt. 11) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt.

7) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:       February 26, 2026
             Rochester, New York

- 14 -